**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| LUIS MARTINEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1997 (RBW) |
| | ) | |
| HARTFORD CASUALTY | ) | |
| INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

**MEMORANDUM OPINION**

Luis Martinez ("the plaintiff") brings this diversity action against Hartford

Casualty Insurance Company ("Hartford" or "the defendant"), alleging that the defendant

acted in bad faith by failing fully to comply with the terms of the plaintiff's insurance

policy when compensating the plaintiff for losses arising out of a fire that destroyed the

plaintiff's rental property in July 2001.  Complaint ("Compl.") ¶¶ 4-19.  The plaintiff

seeks compensatory damages in the amount of $331,196.10, and punitive damages in the

amount of $300,000.  Compl. at 3.  In response, the defendant contends that it has paid all

compensation required by the terms of the policy.  Answer at 3.  Currently before the

Court is the defendant's motion for summary judgment ("Def.'s Mot.").[1]  For the reasons

_____

[1] The following papers have been submitted in connection with this motion: (1) Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."); (2) Plaintiff's Memorandum of Law and Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mem."); (3) Reply in Further Support of Defendant's Motion for Summary Judgment ("Reply"); and (4) Plaintiff's Surreply in Further Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Surreply").

set forth below, the Court concludes as a matter of law that the plaintiff's claims are time-barred by the insurance policy's two-year suit limitations provision.

## I. Background

The following facts are not in dispute.  On July 10, 2001, a fire destroyed rental property owned by the plaintiff located at 7412 Georgia Avenue, N.W., in Washington, D.C.  Compl. ¶ 4; Def.'s Mot. ¶ 1.  The property, which included four apartment units and a basement printing business, was insured by the defendant under Policy No. 42 SBA EN 6816 ("the Policy").  Compl. ¶ 7; Def.'s Mot. ¶ 1; see generally Def.'s Mem., Exhibit ("Ex.") B (the Policy).  The Policy contained a suit limitations provision which stated that "[n]o one may bring a legal action against [the defendant] under this insurance unless: (a) There has been full compliance with all of the terms of this insurance; and (b) The action is brought within 2 years after the date on which the direct physical loss or damage occurs."  Def.'s Mot. ¶ 3; Def.'s Mem. at 2; Def.'s Mem., Ex. B at 13.

### A. Before the end of the two-year limitations period

On November 7, 2001, the defendant made its first payment under the Policy, sending the plaintiff a check for $10,000.  Pl.'s Mem. ¶ 14; Pl.'s Mem., Ex. 10 (Check No. 039659325).  On January 7, 2002, the defendant made a $50,000 payment to the plaintiff as partial compensation for damage to the building.  Pl.'s Mem. ¶ 15; Pl.'s Mem., Ex. 10 (Check No. 039680384).  On March 2, 2002, the defendant's estimator submitted a report assessing the defendant's potential liability for building damages and repair costs at $118,985.75 ($145,277.34 minus $26,041.59 in depreciation and a $250.00 deductible).  Pl.'s Mem. ¶ 14; Pl.'s Mem., Ex. 12 (building estimate).  The defendant then made its third payment to the plaintiff on March 4, 2002, in the amount of

$58,985.76, as further compensation under the Policy.  Pl.'s Mem. ¶ 15; Pl.'s Mem., Ex.

11 (Check No. 039701653).

The parties agree that the two-year limitations period set forth in the Policy for

the filing of lawsuits expired on July 10, 2003. Def.'s Mem. at 5; Pl.'s Mem. ¶ 14.  As of

that date, the defendant had acknowledged its obligation to pay $118,985.75 for damage

to the plaintiff's property and associated costs, which it had paid in full.[2]  However, the

defendant had not admitted its obligation to pay the $26,041.59 for depreciation, and that

amount had not been paid as of that date.[3]  Pl.'s Mem., Exs. 10-12.  Nor had the

defendant otherwise accepted any liability for claims under the Policy as of July 10,

2003.  And it is undisputed that when the two-year limitations period expired, the

plaintiff had not yet initiated legal action against the defendant.[4]

**B. After the end of the two-year limitations period**

In January 2004, Tom Curtin, one of the defendant's claims specialists, sent a

letter to the plaintiff's attorney informing him that he had recently been assigned to the

plaintiff's insurance claim.  Pl.'s Mem., Ex. 1 (January 14, 2004 letter from Tom Curtin

to Bernard Solnik) ("Curtin Letter").  In the letter, Curtin referenced a draft complaint

sent by the plaintiff's attorney to the defendant on December 30, 2003.  Id.  Curtin then

stated:

---

[2]  The defendant's payments of $10,000.00, $50,000.00, and $58,985.76 total $118,985.76.

[3]  In a May 13, 2004 letter from the defendant's claims adjuster to the plaintiff's counsel, the adjuster indicated
that there had initially been disagreement about whether the $26,041.59 depreciation amount was recoverable
under the Policy.  Pl.'s Mem., Ex. 3 (May 13, 2004 letter from Steven Kimberlain to Bernard Solnik).

[4]  The plaintiff contends, and the defendant does not dispute, that "at no time since the July 10, 2001 date of loss did
the Defendant ever mention the two-year limitation of action clause of its policy" to the plaintiff.  Pl.'s Mem. ¶ 9.

> Since I am not totally familiar with the case, and have not received the
> hard copy of the file, I request you hold off on formally filing the suit
> in D.C. Superior Court until after I become thoroughly familiar with the file,
> and have the opportunity to review whatever documentation you are going
> to submit to verify [the plaintiff's] demands.

Id. Curtin also stated that "there is at least one issue of coverage, as to whether or not

[the plaintiff's] printing business was covered under the policy at the time of the loss."

Id. Furthermore, Curtin asked the plaintiff's attorney to provide the defendant with

"[c]opies of your previous letters, which were allegedly ignored." Id.

    In April 2004, the plaintiff's claim was transferred from Curtin to Steven

Kimberlain. See Pl.'s Mem., Ex. 2 (April 18, 2004 letter from Steven Kimberlain to

Bernard Solnik). Kimberlain indicated to the plaintiff's attorney in May 2004 that the

$26,041.59 depreciation assessment was recoverable under the Policy and that the

defendant would be willing to compensate the plaintiff for the depreciation amount. Pl.'s

Mem., Ex. 3 (May 13, 2004 letter from Steven Kimberlain to Bernard Solnik).

Kimberlain reiterated that the printing business was not covered by the Policy, but stated

that the defendant would discuss compensating the plaintiff for potential lost rent for the

basement area in which the printing business was housed. Id.

    On June 30, 2004, the defendant paid the plaintiff $26,041.59 for depreciation,

thus satisfying all claims for which the defendant had acknowledged its potential liability

prior to the expiration of the two-year limitations period. Pl.'s Mem., Ex. 14 (Check No.

088798183). On July 2, 2004, the plaintiff filed suit in the Superior Court of the District

of Columbia, alleging that the defendant had "failed to pay all losses and damages

incurred by the Plaintiff in accordance with the terms and conditions of the insurance

policy," Compl. ¶ 10, and asserting causes of action for breach of contract and bad faith refusal of an insurer to pay a claim, id. ¶¶ 4-19.

The plaintiff's attorney did not immediately serve the complaint upon the defendant. See Notice of Removal to the District Court for the District of Columbia ("Notice of Removal"), Ex. 3 (August 26, 2004 Order granting the plaintiff additional time in which to serve the defendant). Instead, the counsel for the plaintiff sent a letter to the defendant detailing the additional claims the plaintiff was making for compensation under the Policy. Pl.'s Mem., Ex. 6 (July 7, 2004 letter from Bernard Solnik to Steven Kimberlain). The defendant then paid the plaintiff an additional $16,200.00 for lost rent on July 27, 2004, Pl.'s Mem., Ex. 13 (Check No. 003095514), and addressed the plaintiff's other claims in a letter the following day, Def.'s Mot., Ex. C (July 28, 2004 letter from Steven Kimberlain to Bernard Solnik). In that letter, the defendant denied any further liability and offered the plaintiff an additional $10,000 in return for fully releasing it from further obligations under the Policy. Id. The defendant also agreed to reinspect the insured property within thirty days to determine the accuracy of the plaintiff's claim that $73,696.10 in repairs remained necessary, although it stated that it "question[ed] how over $73,000 in repairs would have been overlooked." Id. According to the plaintiff, "[w]hen [the] Defendant never appeared to reinspect the subject premises, the Plaintiff proceeded to effectuate service of process." Pl.'s Mem. ¶ 8.

The defendant was served with the complaint on October 25, 2004, and promptly removed this action from the Superior Court to this Court. Notice of Removal ¶ 2. The defendant then moved for summary judgment on May 26, 2005, arguing that because the

plaintiff's complaint was filed after July 10, 2003, it is time-barred by the Policy's two-year limitations provision.[5]  Def.'s Mot. ¶¶ 3-5; Def.'s Mem. at 5.  In response, the plaintiff contends, <u>inter alia</u>, that (1) the defendant is estopped from asserting the limitations provision as an affirmative defense because its actions "lulled" the plaintiff into not bringing his lawsuit before July 10, 2003; and (2) the defendant waived the limitations period to the extent that it conceded liability on the plaintiff's claims and began settlement discussions with the plaintiff.  Pl.'s Mem. ¶¶ 1-15.  The plaintiff further asserts that, at the very least, a genuine issue of material fact exists as to whether the defendant lulled the plaintiff into missing the July 10, 2003 expiration date, and therefore summary judgment is not appropriate.  Surreply ¶¶ 5-8.

## II. Standard of Review

Courts will grant a motion for summary judgment under Federal Rule of Civil Procedure 56(c) if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-moving party.  <u>VoteHemp, Inc. v. Drug Enforcement Admin.</u>, 237 F. Supp. 2d. 55, 59 (D.D.C. 2002) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)).  The non-moving party, however, cannot rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there is

---

[5]  The defendant also argues that the District of Columbia does not recognize the tort of bad faith refusal to pay an insurance claim.  Def.'s Mot. ¶ 6.  Because the Court finds that all of the plaintiff's claims are time-barred, it will not visit this issue.

a genuine issue for trial." <u>Harrison v. Executive Office for U.S. Attorneys</u>, 377 F. Supp. 2d 141, 145 (D.D.C. 2005) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

### III. Analysis

Contractual provisions limiting the period within which insurance policy-holders may validly initiate a lawsuit are generally enforceable under District of Columbia law.[6] <u>See</u>, <u>e.g.</u>, <u>Bailey v. Greenberg</u>, 516 A.2d 934, 938-40 (D.C. 1986); <u>Centennial Ins. v. Dowd's, Inc.</u>, 306 A.2d 648, 650-51 (D.C. 1973); <u>Roumel v. Niagara Fire Ins. Co.</u>, 225 A.2d 658, 660 (D.C. 1967); <u>Emersons, Ltd. v. Max Wolman Co.</u>, 388 F. Supp. 729, 731-32 (D.D.C. 1975) (applying District of Columbia law). The plaintiff does not contest that the Policy contains a provision requiring that legal action be initiated no more than two years after the date of the loss or damage for which compensation is sought. <u>See</u> Pl.'s Mem. ¶ 14. Nor does the plaintiff disagree that he failed to file suit before the expiration of the Policy's two-year limitations period. <u>Id.</u> (acknowledging "the expiration of the two (2) year contractual limitation of actions"). However, the plaintiff posits that this action is not barred by the Policy's limitation period for several reasons.[7] First, the plaintiff argues that his case should not be dismissed because the defendant lulled him into missing the July 10, 2003 limitations deadline and is consequently estopped from raising the contractual limitations period as a bar to this action. Pl.'s Mem. ¶¶ 1-3. Second, the plaintiff argues that because the defendant allegedly conceded liability and

---

[6] The parties agree that District of Columbia law applies to the issues presented in this case.

[7] The statute of limitations for breach of contract claims in the District of Columbia is three years. D.C. Code § 12-301(7) (2001). Therefore, in the absence of the Policy's limitations provision, the plaintiff had until July 10, 2004, to initiate this action.

entered into settlement discussions with him, it implicitly waived the two-year limitations period.[8]  Pl.'s Mem. ¶¶ 2-5.  The Court will examine these arguments in turn.

## A. Estoppel

It is well-settled in the District of Columbia that "[b]oth waiver and estoppel can be invoked to preclude a party from asserting [a limitations period] as an affirmative defense."  Partnership Placements, Inc. v. Landmark Ins. Co., 722 A.2d 837, 841 n.14 (D.C. 1998) (citing cases).  "A defendant is estopped from raising [a limitations period] as a defense if that defendant has done anything that would tend to lull the plaintiff into inaction and thereby permit the [limitations period] to run against him."  Id. at 842 (internal quotation marks and citations omitted).  That is, "[t]he defendant must have done something that amounted to an affirmative inducement to [the] plaintiff[] to delay bringing action."  Bailey, 516 A.2d at 937 (quoting Hornblower v. George Washington Univ., 31 App. D.C. 64, 75 (D.C. 1908)) (internal quotation marks omitted) (emphasis added).  However, District of Columbia courts "have interpreted this principle narrowly." Id. (citing cases).

Here, the plaintiff argues that the following actions by the defendant estop it from relying on the limitations defense: (1) the January 2004 letter in which Tom Curtin

---

[8]  The plaintiff also argues that the limitations provision does not apply unless, as the Policy states, "there has been full compliance with all of the terms of this insurance."  Pl.'s Mem. ¶ 13 (quoting Policy); see also Def.'s Mem., Ex. B at 13.  Thus, the plaintiff contends that the defendant's alleged failure to comply with the terms of the insurance policy invalidates the two-year limitations provision.  Pl.'s Mem. ¶¶ 14-15.  This, however, is a disingenuous misreading of the clause in question, which states in full: "No one may bring a legal action against [the insurer] under this insurance unless: (a) There has been full compliance with all of the terms of this insurance; and (b) The action is brought within 2 years after the date on which the direct physical loss or damage occurs."  Def.'s Mem., Ex. B at 13.  It is clear that the requirement of full compliance with the Policy and the two-year limitations period are independent prerequisites a policy-holder must satisfy to bring a legal action against the insurer.  Consequently, the plaintiff's position that the limitations period requirement is contingent on the defendant's compliance with the insurance policy is meritless.

requested that the plaintiff "hold off on formally filing . . . suit," Pl.'s Mem. ¶ 3; (2) the April and May 2004 letters in which Steven Kimberlain acknowledged that depreciation was recoverable and displayed a willingness to compensate the plaintiff for lost rent related to the basement printing business, id. ¶¶ 4-5; (3) the June 2004 payment of $26,041.59 for the depreciation of the plaintiff's property, id. ¶ 5; and (4) the July 2004 letter in which the defendant agreed to reinspect the insured premises and offered the plaintiff $10,000 to fully release the defendant from additional obligations under the policy, id. ¶¶ 5-6.  The plaintiff contends, based on these events, that "[t]here is clearly sufficient evidence that [the defendant] did or may have lulled [the] Plaintiff into filing suit after the two-year limitation" period.  Surreply ¶ 5.

The plaintiff's argument is predicated on a fundamental misunderstanding of District of Columbia law.  In the District of Columbia, an insurance company is estopped from raising a contractual limitations period as an affirmative defense "where the company has made misleading representations to the insured and the insured has relied on those representations to his or her detriment."  Bailey, 516 A.2d at 939 n.5 (citations omitted).  According to the plaintiff, "the very fact that [the defendant] kept the claim open upon the expiration of the two year limitations period, and continued negotiating with [the] Plaintiff before and after the two year period . . . constitutes deceptive lulling activity."  Surreply ¶ 7.  This is plainly wrong.  The defendant's conduct after the expiration of the two-year period cannot constitute "lulling" for the purpose of estoppel, because actions taken in 2004 could not have prevented the plaintiff from initiating legal action before the contractual limitations period expired in 2003.  And, other than the plaintiff's vague and unsupported claim that the defendant "continued negotiating with

9

[the] Plaintiff <u>before</u> and after the two year period," Surreply ¶ 7 (emphasis added), the plaintiff does not allege that the defendant engaged in any conduct prior to the expiration of the limitations period that discouraged the plaintiff from filing this action.  He has therefore "failed to show any misleading conduct by [the defendant] that occurred <u>before</u> <u>[he] had already allowed the [limitations period] to lapse.</u>"  <u>Landmark</u>, 722 A.2d at 842 (emphasis in original).  Far from "lull[ing] the plaintiff into inaction," <u>id.</u>, it appears that the defendant timely provided the plaintiff with an estimate of the building damages, repair costs, and depreciation in a March 2, 2002 report, Pl.'s Mem., Ex. 12.  The plaintiff then had over a year before the expiration of the contractual limitations period to assess whether the defendant intended to pay "all losses and damages" that the plaintiff believed were covered "in accordance with the terms and conditions of the insurance policy," including the basement printing business, Compl. ¶ 10, and to bring appropriate legal action to resolve whatever disputes arose about coverage under the Policy.  The plaintiff did not do this.  Accordingly, because the plaintiff's "own inaction kept [him] from filing a timely complaint, [he] cannot say that the conduct of [the defendant], occurring after the limitation period had run, somehow lulled [him] into not filing." <u>Landmark</u>, 722 A.2d at 842.

Nor has the plaintiff demonstrated lulling merely because the defendant "never mention[ed] the two-year deadline until [the] Plaintiff filed this lawsuit."  Surreply ¶ 7. As already noted, to be estopped from raising the contractual limitations period as a bar to the plaintiff's claims, the defendant must have made "an affirmative inducement to [the] plaintiff[] to delay bringing action."  <u>Bailey</u>, 516 A.2d at 937 (quoting <u>Hornblower</u>, 31 App. D.C. at 75) (internal quotation marks omitted).  The defendant's failure to call

the plaintiff's attention to the Policy's expressly delineated limitations provision is surely not such an affirmative inducement.

Finally, the plaintiff contends that "discovery will likely reveal . . . examples of lulling activity that occurred prior to the expiration of the two-year period."  Surreply ¶ 8. The plaintiff relies on <u>Bailey</u> for the proposition that "even the slightest probability that [the] Plaintiff could show lulling conduct is enough to preclude summary judgment.  <u>Id.</u> (citing <u>Bailey</u>, 516 A.2d at 940).  If that were indeed the standard articulated in <u>Bailey</u>, then the plaintiff's argument would be sound.  However, that is not the <u>Bailey</u> standard. In <u>Bailey</u>, the plaintiff had adduced facts that, while not conclusive, nevertheless tended to show lulling conduct <u>before</u> the expiration of the limitations period.  <u>Bailey</u>, 516 A.2d at 935-36.  The <u>Bailey</u> Court therefore held that "Bailey was entitled to prove the oral acknowledgements [sic] and admissions and the circumstances under which they were made."  <u>Id.</u> at 940.  The Court went on to say that "[w]ere [the plaintiff] able to show the delay in filing suit was induced as a result of such representations, [the defendant] would be estopped from pleading the [limitations period] as a bar."  <u>Id.</u>  It is apparent that the analysis in <u>Bailey</u> turns on the fact that the defendant there had made representations before the limitations period expired which, if proven, might show that the plaintiff's delay in bringing legal action had been induced by the defendant.  Unsurprisingly, nothing in <u>Bailey</u> suggests that such oral acknowledgments and admissions could have induced the plaintiff's delay in timely filing her claim if they had been made <u>after</u> the expiration of the limitations period.  Here, the plaintiff has not alleged any conduct which, if proven, would demonstrate that the defendant, prior to July 2003, induced the

plaintiff to delay bringing suit until after the two-year period had expired.  The plaintiff's

estoppel argument must therefore be rejected.

**B. Waiver**

Under District of Columbia law, "[t]he general rule is that an insurance company

is not deemed to have waived a contractual limitations period . . . unless the company has

conceded liability and some discussion of a settlement offer has occurred."  Bailey, 516

A.2d at 938-39 (citations omitted).  The plaintiff claims that the defendant waived the

two-year limitations period when it conceded liability for the value of the depreciation

and the lost rental income in May and July 2004 and offered to settle the plaintiff's

remaining claims for $10,000 in July 2004.  Surreply ¶¶ 1-4.  The plaintiff's argument is

unpersuasive.  First, the plaintiff does not allege any conduct taking place before the

contractual limitations period ended on July 10, 2003.  Second, and more importantly, the

conduct the plaintiff points to does not constitute a concession of liability as to any of the

claims at issue in this litigation.

In arguing that the defendant waived the two-year contractual limitation, the

plaintiff again relies wholly on conduct taking place after the expiration of the limitations

period.  Surreply ¶¶ 1-2.  The plaintiff does not allege that the defendant conceded

liability and engaged in settlement discussions on any of the disputed claims before July

10, 2003.  See generally Compl.; Pl.'s Mem.; Surreply.  Rather, the plaintiff appears to be

arguing that any settlement offer (assuming arguendo that the $10,000 offered by the

defendant constitutes a settlement proposal), no matter how far removed from the end of

the limitations period, triggers a retroactive waiver of the limitations provision.  Surreply

¶ 2 (stating that "[i]n May and July 2004, which dates are both after the expiration of the

two-year suit limitations clause, [the defendant] conceded liability for depreciation . . . and for lost rental income . . . and paid [the] Plaintiff for those claims"). The plaintiff does not cite, and the Court cannot find, any case law to support this proposition. See Landmark, 722 A.2d at 842 (declining to find waiver or estoppel where the defendant's conduct occurred after the plaintiff "had already allowed the [limitations period] to lapse") (emphasis omitted); accord Friendly Farms v. Reliance Ins. Co., 79 F.3d 541, 545 (6th Cir. 1996) (holding that "acts or conduct giving rise to waiver . . . must have occurred within the time limitation contained in the policy, rather than after such limitations have run.") (quotation marks, ellipses, and citations omitted); Marselis v. Allstate Ins. Co., 16 Cal. Rptr. 3d 668, 671 (Cal. Ct. App. 2004) (holding that "[c]onduct by the insurer after the limitation period has run . . . cannot, as a matter of law, amount to a waiver") (quotation marks and citation omitted); Webb v. Blue Cross Blue Shield of Louisiana, 711 So.2d 788, 790-91 (La. App. 1998) (holding that "[u]nless the insurer in some manner leads the insured to reasonably believe the time limitation has been waived while the claim is under consideration . . . the suit must be filed within the prescribed period, even if the claim is pending").

Moreover, "[t]he purpose of [contractual limitations] provisions is to prevent the insured from engaging in unreasonable delay in proceeding to enforce or pursue the claim so that insurers may otherwise be protected." Auto-Owners Ins. Co. v. Cox, 731 N.E.2d 465, 467 (Ind. Ct. App. 2000). Conversely, the purpose of waiving such provisions is to prevent insurance companies from "avoid[ing] payment of claims by entering into prolonged negotiations and then withdrawing after the . . . limitation[s] period has passed." Roumel, 225 A.2d at 660. But this is not a case in which the

defendant first conceded that it was liable for any part of the $331,196.10 that is the subject of the plaintiff's complaint and then, following the expiration of the two-year limitations period, withdrew its concession.  In fact, the plaintiff does not allege that the defendant ever conceded liability as to the claims that are the subject of the instant litigation, or otherwise caused the plaintiff to delay timely filing his claim.  Thus, there is no justifiable explanation, based on the conduct of the defendant, for the plaintiff's failure to sue within the two-year period.

If a plaintiff has reason to believe that legal action is necessary in order to recover a claim, he must file suit within the limitations period.  See Tubongbanua v. United States, 223 F. Supp. 379, 381 (D.D.C. 1963); accord Webb, 711 So.2d at 790-91 (holding that unless an insurer concedes liability and "reasonably induce[s] an insured to believe his claim will be settled without suit, the insurer is not precluded from invoking an applicable limitation in the policy"); Cox, 731 N.E.2d at 467-68 ("Contractual limitation periods may be waived by an insurer if its conduct is sufficient to create a reasonable belief on the part of the insured that strict compliance with the policy provision will not be required") (citation and quotation marks omitted).  The plaintiff has presented no evidence showing that he believed the defendant had waived the contractual limitations period or that it was otherwise unnecessary to bring legal action on his outstanding claims before the end of the two-year limitations period expressly set forth in the Policy. Instead, it appears that the plaintiff was on notice, well before the end of the two-year suit limitations period, that the defendant had (1) calculated, conceded liability for, and paid $118,985.76 in damage and related monetary loss, (2) calculated (and apparently

denied liability for) $26,041.59 for depreciation value,[9] and (3) not acknowledged liability for any other claims of damages, including the plaintiff's claim that the basement printing business was covered under the Policy.  <u>See</u> Curtin Letter at 1 (noting, in January 2004, ongoing disagreement between the parties about coverage of the printing business under the Policy).  The plaintiff had ample knowledge, as the end of the two-year period approached, as to which claims the defendant was conceding its liability, and ample time to file a complaint before July 2003 as to those claims that the plaintiff believed were unresolved.  Yet the plaintiff's "own inaction kept [him] from filing a timely complaint."  <u>Landmark</u>, 722 A.2d at 842.  Nor has the plaintiff provided any evidence showing that the claims he raises in his July 2004 complaint, which presumably are the same claims detailed in his letter to the defendant that same month,[10] Pl.'s Mem., Ex. 6, could not have been filed before the end of the two-year contractual limitations period in July 2003.  In short, the plaintiff has presented the Court with no reason why the limitations period on the $331,196.10 in additional claims that the plaintiff now requests should not have commenced in July 2001 and expired two years later.

The plaintiff does not and, from the evidence presented, cannot allege that the defendant has conceded liability for any claims that it has not already paid.  Even the defendant's offer to pay $10,000 for full release from the plaintiff's remaining claims is plainly not a concession of liability; the defendant's July 28, 2004 letter, which offers "an

---

[9]  As already noted, the defendant ultimately acknowledged that depreciation was covered under the Policy, Pl.'s Mem., Ex. 3, and satisfied this claim with a payment of $26,041.59 on June 30, 2004, Pl.'s Mem., Ex. 14.

[10]  The plaintiff's complaint does not detail his claims against the defendant under the Policy.  Rather, the complaint states only that "the Defendant has failed to pay all losses and damages incurred by the Plaintiff in accordance with the terms and conditions of the insurance policy."  Compl. ¶ 10.

additional $10,000 in exchange for a policyholders release," takes pains to state the defendant's position that none of the plaintiff's additional claims are covered by the terms of the Policy.  Def.'s Mot., Ex. C; accord Hounshell v. Am. States Ins. Co., 424 N.E.2d 311, 314 (Ohio 1981) (holding that "[w]here there is a specific denial of liability upon the policy . . . there would generally be no waiver occasioned by an offer of settlement").   Because waiver of a contractual limitations period under District of Columbia law must involve a concession of liability by the insurer, Landmark, 722 A.2d at 841, and because there is no evidence that the defendant has ever conceded liability as to any of the claims for which the plaintiff now seeks judicial relief, the Court concludes that the defendant did not waive the two-year contractual limitations period expressly set forth in the Policy.  Accordingly, for the foregoing reasons, the Court grants the defendant's motion for summary judgment.

     **SO ORDERED** this 6th day of April, 2006.[11]

REGGIE B. WALTON
United States District Judge

---

[11]  An Order consistent with this Memorandum Opinion was issued on March 24, 2006.